Mr. Steinberg, take your time whenever you're ready. May it please the Court, Michael Steinberg representing the Appellant Rachel Goode. This is a case where Mr. Goode was found by the Administrative Law Judge to be very limited and the vocational expert only came up with two jobs that fit the hypothetical with occasional. No, I'm sorry. You can only do two jobs that fit the hypothetical that were bakery helper and shipping and receiving a weigher. Now the bakery helper job is one of 1,590 jobs within a SOC category. SOC is a specific occupational classification category. The vocational expert said there was 43,000 of these jobs in the national economy. Our position on this is that he did not, there's not 43,000 bakery helper jobs. There's 43,000 possible light unskilled jobs within this category and he identified bakery helper as an example. Here's my understanding of what the vocational expert did in this case. He went to the category number of 51-3099 which is food processing workers comma all other and then he gave the number as you said of 43,000. It's actually 42,620 but 43,000 for our purposes. But as you said that is for all of those food processing workers nationally, not for bakery helper. And then if you go down the U.S. Bureau of Labor Statistics website, this is not the exact match but for example for bakery and tortilla manufacturing, even on the national level you've only got 1,860 jobs. And so there was no match for the numbers that the vocational expert provided for bakery helper. That's our argument. Okay, there's another argument and that's the SOC group that he mentioned doesn't match the SOC group that's given by the Bureau of Labor Statistics. They have a crosswalk that matches the DOT number with the SOC group and in this case the crosswalk shows that a bakery helper is under 519199 which is production workers all others. So not only did he get, he got the wrong SOC group when that was pointed out, but the other argument is that he gave the total number of jobs within that group rather than that for that specific DOT occupation. Right, so even if you took him even if you took him at face value in choosing 51-3099 as the group, he overestimated by 41,000. Right, and that's the relevant work category. That's assuming that's the, you know, the number, the 1800 number, it represents the bakery helper. There may be more than one DOT occupation. That's a maximum, not a minimum. The other job that was mentioned had a reasoning level of three and our position was that that's inconsistent with the simple routine repetitive task and again, the numbers I believe that he gave were for a group of jobs, but this was the only job in that group that fit the judge's hypothetical and when he was asked if there were other jobs, he said no, these are the only two jobs in the national economy given that hypothetical at the light level. And that according to the government's brief, it's conceding that the bakery helper job is the only one that's at issue, right? Right, and when I asked the vocational expert if he's ever seen the job performed, he said no. So, that's pretty much our argument and I understand that, you know, the vocational expert is considered a reliable governmental source, but he's not the only source. The regulations say you can consider other reliable sources, the census, the occupational employment statistics. So, you know, where there's a conflict between the information and the other reliable governmental sources and the testimony of the vocational expert, I'm asking the court to go further than the Washington case with just the conflict with the DOT and say if there's an obvious conflict between information and a government publication and the testimony of the vocational expert, the judge should explain the basis for his accepting the VE testimony, especially when it was pointed out. Okay, thank you. Thank you. You've saved your time for rebuttal. Ms. Jamison. Good morning, your honors. Good morning. I'm Natalie Jamison, assistant regional counsel. May I please report? Natalie Jamison, assistant regional counsel for the Social Security Administration. Can you hear me? Yes. Okay. Thank you. I'm going to go right in to where claimant's counsel started when we're talking about the SOC codes and whether or not there's a problem between the production worker code and the food processors. This is our position. This is an unsupported position for this argument. Claimant had the opportunity at the hearing to question the vocational expert regarding the case. Well, the vocational expert was wrong, correct? Just flat out wrong. Yes, your honor. I mean, that's just as clear as day. And he didn't miss by a little. You know, if the difference had been that the number of jobs available was, you know, 3,500 and he thought there were 3,000 or 3,500, you could say, okay, harmless error. It's close. But the error is over 41,000 jobs. Right, your honor. And if you've given up the other category, why in the world should we not send this back and get it done the right way? Well, your honor, when we start talking about the number of jobs and even if we accept that the vocational expert identified the wrong job code. Well, he did, right? Right. And then from that standpoint, then we go forward and we go down to 1,400 jobs as claimant's counsel has pointed out. Nationally? Right. With no identification of how many of those were in local economy. Right. You have no idea. What if there were 20 of those jobs in the local economy? That would factor into the equation. On the other hand, if out of those 1,800, 1,700 were in the local economy, that would factor in your favor too. We just have no clue. We have no idea. But what we have to do, your honor, is we have to rely on the vocational expert's expertise and her experience. But that experience is completely, she blew it. I mean, yes, as a general matter, the vocational expert has expertise and you rely on them because they know what they're doing. But if someone is this blatantly wrong, it's like looking at a chart that says 25 and the expert tells you, no, that chart says 15. But I'm an expert, so trust me, don't trust the chart. I just don't understand. I'm sorry. Well, your honor, I have to go on the case law that I have. I know, and I'm not trying to make this hard for you because you're not at fault if there was any fault. But you're defending the ALJ's decision, and so you're at the firing line. Yes, and your honor, I have worked this case from the very beginning. I'm here before you this morning. I have, I know this case backwards and forwards. And, you know, claimant's counsel and I, we've talked. She's a very sympathetic claimant. And I will go with the case law that I have, which is that claimant's counsel had the opportunity to question the vocational expert at the hearing, and they didn't. And most recently, the Supreme Court held that claimant could probe evidence at the hearing in the BSTEC case, and they didn't. The hearing is the place for eliciting and developing evidence and the relevant facts. And that's where this should have been discussed. What did the claimant say at the hearing with respect to the vocational expert's testimony? What did the claimant say? Yes, the claimant's counsel say at the hearing with regards to the testimony. The claimant's counsel at the hearing asked specifically how she came to her numbers. And the vocational expert said that she relied on her professional experience, the occupational handbook, and the OES. And so, and like the district court said, that she didn't just spout these numbers. She relied on her experience and her expertise. What did the claimant's lawyer argue to the ALJ at the end of the day with regard to the vocational expert's testimony? Specifically, the claimant's lawyer argued, he questioned how she got to these numbers. He didn't, he didn't- And what was the government's response to that, as to how the vocational expert got to those numbers? You mean the administrative law judge's response? No, the commissioner's response. I mean, in terms of we- Was there any explanation provided to the ALJ about how the expert came to these numbers or to the opinion? Could you repeat that? I want to make sure I get- Sure. He, the lawyer for the claimant says the vocational expert hasn't really provided an explanation for how she used these numbers, got to these numbers, got to this opinion. What was the commissioner's response to that argument at the hearing? At the hearing or in our brief? No, at the hearing, where you say everything should have taken place. That was with the ALJ, but I mean, we weren't at the hearing. You didn't have any, you don't have any, you don't have any participation at the hearing, even as like standby? It's just the claimant and the ALJ? Right. You don't have anybody there at the hearing? No. Okay. I misunderstood that. I'm sorry. But no, my, darn it, I lost my point. But what I'm saying is- That's okay. You were trying to get to what the ALJ said about the vocational expert's testimony, I think. Actually, I think I was going to go ahead and go with what the district court said. Okay. In terms of the vocational expert didn't just rely on the OES. She also relied on her experience, and I understand how you feel about her experience, given the facts of this case. That's only my view, and I could be flat out wrong, and my colleagues could think differently, so don't take my views as those of the panel. Well, Your Honor, one of the things is that the vocational expert is the expert on the number of jobs, and the ALJ is going to determine whether or not this is a significant number of jobs, and that's really the issue at this stage. And as far as the vocational expert's testimony, we believe that it constitutes substantial evidence. To the extent that there is an error, we believe that the government, the commissioner, believes this is a harmless error. We have a case file that says, the Brooks case that says as few as 840 jobs is a significant number. And we also have the- What's the correct number? For bakery helper in the local economy, what's the right number? Well, according to Klayman's argument, it's- No, I'm not asking you about Klayman, I'm asking you. You have the statistics too, and you've got the Bureau of Labor documents, so what's the right number? It's 1,440, and that's the number. But the other thing that Klayman's counsel brought up is that he wants to- That's the local number or national number? National. What's the local number? He would have had to do another cross-stratification of codes and data to get into the local number, right? Responding to Klayman's counsel's request for an extension or a new rule requiring the ALJ to investigate the vocational experts' testimony for a conflict with the OES, recently this court ruled in Webster that we're not going to develop any more, any extending rules in terms of requiring the ALJ to investigate the vocational experts' testimony. Look for a conflict with the OES, and like we said, we do- The Supreme Court also said that we should not engage in categorical rules. We should look at cases on a case-by-case basis, and even if the vocational experts' testimony has a problem, it still can be considered substantial evidence. Klayman's attempt to undermine the vocational testimony on appeal is contrary to applicable law and lacks evidentiary support. The commissioner respectfully requests that you affirm the decision. Thank you for your time. All right. Thank you so much. Just a brief rebuttal. So, we have a situation where you ask the vocational expert, what SOC code is bakery helper? And he gives a code number, and that code number is wrong. And his numbers are based on that wrong code number. And the representative at the hearing, he doesn't know that it's the wrong code number at the time of the hearing. He's taken the vocational expert's word for it that, you know, it's this particular code number. After the hearing, go back and say, this is not even the right SOC group. This is- it should have been under this other one. Tells the judge that. I think that there's a difference between the administrative law judge going to the occupational employment statistics and doing the research and determining if there's a conflict and being pointed out that there's a conflict between the category used by the vocational expert and the accurate category. So, you know, if it's just on its face not true, I think that the judge should have to go back and say, look, you know, you got the wrong category. Or if it isn't the wrong category, explain why you're saying it's this number and it's according to the occupational employment statistics, it's the other group. All right. Thank you both very much. We appreciate it.